BONAREK v WAYNE COUNTY BOARD OF INSTITUTIONS

Docket Nos. 91763, 91788. Submitted October 15, 1987, at Detroit. Decided December 21, 1987. Leave to appeal applied for.

Kenneth Bonarek was injured while at work and he sought medical treatment provided by Wayne County Board of Institutions. The treatment he received was allegedly rendered in a negligent manner and, as a result, Kenneth Bonarek suffered permanent brain damage. Emily T. Bonarek, individually and as guardian and conservator of the estate of Kenneth Bonarek, and others filed a malpractice suit against Wayne County Board of Institutions in Wayne Circuit Court and eventually agreed to a structured settlement to resolve the case. The settlement included lump-sum payments to plaintiffs and the purchase of annuities by defendant which would pay plaintiffs a certain amount for each month of Kenneth Bonarek's life and pay both of the law firms representing plaintiffs a certain amount each year for ten-year periods. Michigan Mutual Insurance Company (MMIC) and the Second Injury Fund (SIF), both of which had paid workers' compensation benefits to Kenneth Bonarek, sought reimbursement for the amounts they had expended. Plaintiffs, MMIC, and SIF could not agree on the amounts to which MMIC and SIF were entitled. Plaintiffs filed a motion for declaratory judgment on the cost of recovery, contending that the amounts owed to MMIC and SIF should be determined by applying the formula set forth in *Franges v*

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 371, 441, 643.

Construction and application of provisions of Federal Employees' Compensation Act (5 USCS sec. 8132) requiring compensation beneficiary who recovers from third person or receives money in settlement of claim, to refund to United States amount of compensation paid, after deducting cost of suit and reasonable attorney's fees. 17 ALR Fed 494.

Third-party tortfeasor's right to have damages recovered by employee reduced by amount of employee's workers' compensation benefits. 43 ALR4th 849, sec. 1.

Workmen's compensation: attorney's fee or other expenses of litigation incurred by employee in action against third party tortfeasor as charge against employer's distributive share. 74 ALR3d 851 § 1.

*General Motors Corp*, 404 Mich 590 (1979). Under that formula, plaintiffs claimed that their recovery was equal to the amount of the lump-sum payments added to the amount required to fund the annuities. They also claimed that their expenses of recovery included the amount required to fund the annuities for their law firms and other costs. MMIC and SIF claimed that the *Franges* formula was inapplicable to structured settlements. MMIC and SIF further contended that, in the event the *Franges* formula did apply, plaintiffs' recovery was equal to the amount of the lump-sum payments added to the present value of the future annuity payments and that the plaintiffs' expenses of recovery included the present value of their law firms' future annuity payments and their other costs. The court, Michael L. Stacey, J., granted the plaintiffs' motion, thereby holding that the *Franges* formula was applicable, that plaintiffs' recovery was equal to the lump-sum payments received as well as the present cost of the annuities, and that plaintiffs' cost of recovery included the present cost of their law firms' annuities as well as their other costs. MMIC and SIF filed separate appeals, which have been consolidated.

The Court of Appeals *held:*

1. The *Franges* formula applies to all cases where the parties themselves cannot agree upon a division of the amount recovered or the recovery expenses. The amount of the recovery and the recovery expenses should be determined as they appear on the judgment date.

2. Plaintiffs' recovery for the purposes of the *Franges* formula was the cost of their annuities added to their lump-sum payments. Similarly, the cost of the law firms' annuities added to plaintiffs' other costs was plaintiffs' cost of recovery. The trial court properly granted plaintiffs' motion for declaratory judgment on the cost of recovery.

Affirmed.

1. WORKERS' COMPENSATION — TORTS — BENEFITS — REMEDIES.

There are three separate "interests" in the recovery in a tort action against the party responsible for an injured employee's injury: (1) the employee's interest in the lump-sum dollar recovery; (2) the workers' compensation insurer's interest in reimbursement for benefits paid or payable as of the date of the judgment; and (3) the employee's interest in any excess amount by which the tort recovery exceeded the reimbursement amount (MCL 418.827[5], [6]; MSA 17.237[827][5], [6]).

2. WORKERS' COMPENSATION — TORTS — EXPENSES — APPORTIONMENT.

Any amount by which the recovery in a tort action against the

party responsible for an injured employee's injury exceeds the amount which must be reimbursed to the workers' compensation insurer is an "interest" of the insurer which appears at the time of the recovery and is treated as a future credit against payment of additional workers' compensation benefits; the insurer must pay its share of recovery costs for this interest (MCL 418.827[5], [6]; MSA 17.237[827][5], [6]).

3. WORKERS' COMPENSATION — TORTS — EXPENSES — APPORTIONMENT.

Application of the formula for determining whether and how recovery expenses are to be divided where funds remain after the workers' compensation insurer has been reimbursed for benefits paid to the injured employee up until the time of the recovery in a tort action against the party responsible for an injured employee's injury is not limited to lump-sum recoveries; the formula applies to all cases where the parties themselves cannot agree upon a division of the amount recovered or the recovery expenses (MCL 418.827[5], [6]; MSA 17.237[817][5], [6]).

4. WORKERS' COMPENSATION — TORTS — EXPENSES.

The amount of recovery and the recovery expenses in a tort action against the party responsible for an injured employee's injury should be determined as they appear on the judgment date (MCL 418.827[5], [6]; MSA 17.237[827][5], [6]).

5. WORKERS' COMPENSATION — TORTS — GROSS RECOVERY — COSTS OF RECOVERY — ANNUITIES.

An injured employee's gross recovery and the costs of recovery in a tort action against the party responsible for the employee's injury includes the amount required to fund any annuities included in the judgment or settlement (MCL 418.827[5], [6]; MSA 17.237[827][5], [6]).

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Ronald A. Weglarz*), for plaintiffs.

*Lacey & Jones* (by *Gerald M. Marcinkowski*), for Michigan Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ray W. Cardew, Jr.,* Assistant Attorney General, for the Second Injury Fund.

Before: J. H. GILLIS, P.J., and GRIBBS and J. C. TIMMS,* JJ.

PER CURIAM. In these consolidated appeals, Michigan Mutual Insurance Company (MMIC) and the Second Injury Fund (SIF) appeal as of right from the circuit court's order granting plaintiffs' motion for declaratory judgment on cost of recovery. We affirm.

Plaintiff Kenneth Bonarek was injured while at work. As a result, he sought medical treatment. Because the medical treatment rendered by defendant Board of Institutions, County of Wayne, was allegedly negligent, plaintiff Kenneth Bonarek suffered permanent brain damage. Plaintiffs sued defendant for malpractice and eventually agreed to a structured settlement to resolve the case. Under the settlement, defendant had to pay plaintiffs $200,000 by September 30, 1985, and $170,000 by January 30, 1986. Defendant further had to purchase annuities which would pay plaintiffs $8,700 for each month of Kenneth Bonarek's life. Payments were guaranteed for ten years and there was a three percent annual compound escalator. Finally, defendant had to purchase annuities which would pay one of plaintiffs' law firms $63,000 each year for a ten-year period beginning on August 1, 1986, and plaintiffs' other law firm $90,208.87 each year for a ten-year period beginning on August 1, 1989.

MMIC and SIF, which had paid workers' compensation benefits to Kenneth Bonarek, sought reimbursement for amounts expended. MCL 418.531(3) and 418.827; MSA 17.237(531)(3) and 17.237(827). When plaintiffs, MMIC, and SIF could not agree on the amounts to which MMIC and SIF were entitled, plaintiffs filed a motion for declaratory judgment

---

* Circuit judge, sitting on the Court of Appeals by assignment.

on the cost of recovery. Plaintiffs contended that the amount owed to MMIC and SIF should be determined by applying the formula outlined by our Supreme Court in *Franges v General Motors Corp,* 404 Mich 590; 274 NW2d 392 (1979). Under that formula, plaintiffs claimed that their recovery was equal to the amount of the lump-sum payments ($370,000) added to the amount required to fund the annuities. Moreover, plaintiffs claimed that their expenses of recovery included the amount required to fund their law firms' annuities and other costs.

On the other hand, MMIC and SIF claimed that the *Franges* formula was inapplicable to structured settlements because *Franges* itself involved a lump-sum payment. In the event that *Franges* did apply, MMIC and SIF argued that plaintiffs' recovery was equal to the amount of the lump-sum payments ($370,000) added to the present value of the future annuity payments. MMIC and SIF further claimed plaintiffs' expenses of recovery included the present value of their law firms' future annuity payments and their other costs. Naturally, the amount of recovery and the expenses of recovery affect the outcome of the *Franges* formula.

After hearing oral argument, the trial court granted plaintiffs' motion. Hence, the trial court held that *Franges* applied and that plaintiffs' recovery was equal to the lump-sum payments received as well as the present cost of the annuities. Plaintiffs' cost of recovery included the present cost of their law firms' annuities as well as their other costs.

MCL 418.827; MSA 17.237(827) provides in part:

> (5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal repre-

sentative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

(6) Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery.

In *Franges, supra,* our Supreme Court interpreted these sections in order to determine a workers' compensation insurer's interests in an injured employee's recovery from a third-party tortfeasor. As MMIC and SIF note, *Franges* involved a lump-sum settlement. Our Supreme Court first noted that Michigan's workers' compensation statute permits an injured employee to pursue a third-party tort claim because it is recognized that workers' compensation is not intended to be full payment for all the losses suffered. *Franges, supra,* 612-613. In the event that the injured employee was successful in his separate tort action, the Court further noted that the workers' compensation insurer should be entitled to reimbursement for benefits paid, thereby placing the cost of the injury upon the negligent party. *Id.,* 613.

The issues in *Franges, supra,* were whether and how recovery expenses were to be divided where funds remained after the insurer had been reim-

bursed for benefits paid to the employee up until the time of recovery. The Court first noted that MCL 418.827(6); MSA 17.237(827)(6) provided that expenses of recovery were to be apportioned by the court between the parties "as their interests appear at the time of the recovery." The Court then held that there were three "interests" in an employee's third-party tort suit: (1) the employee's interest in the lump-sum dollar recovery, (2) the insurer's interest in reimbursement for benefits paid or payable as of the date of the judgment, and (3) if the amount of tort recovery exceeded the reimbursement amount, the employee's interest in the excess. *Franges, supra,* p 614. The Court noted that this final interest was really an insurer's interest because it was treated as a future credit against the payment of additional workers' compensation benefits. *Id.,* 615. The Court then held that, because this last "interest" also appears at the time of recovery, the insurer must pay its share of recovery costs for this interest. The Court adopted the *pari passu* approach used in Pennsylvania and New Jersey to distribute the funds and then devised a formula to calculate the various interests involved. *Id.,* 617-623. In *Franges, supra,* pp 619-621, the injured employee's recovery in the third-party suit was referred to as "gross recovery."

As discussed above, plaintiffs, MMIC and SIF dispute how recovery or gross recovery is to be determined. While all three agree that the lump-sum payments are valued as of the date of recovery, they disagree over the valuation of the annuities as discussed above.

We agree with plaintiffs that the *Franges* formula, which interpreted MCL 418.827(5) and (6); MSA 17.237(827)(5) and (6), applies to all cases where the parties themselves cannot agree upon a

division of the amount recovered or the recovery expenses. *Franges, supra,* p 602, n 1 and pp 616-617. We further agree with plaintiffs that their recovery and their recovery expenses should be determined as they appear on the judgment date. MCL 418.827(5) and (6); MSA 17.237(827)(5) and (6). *Franges, supra.* Hence, the only issues in this case are how to determine the employee's gross recovery and costs of recovery where an annuity is involved.

In *Merendino v FMC Corp,* 181 NJ Super 503; 438 A2d 365 (1981), the plaintiff was administratrix of her deceased's husband's estate. The husband was killed in the course of his employment. Under New Jersey law, workers' compensation death benefits were to be paid for 450 weeks and totaled $41,238.90. Further benefits were available to the plaintiff if certain contingencies were met. The plaintiff sued the defendant as a third-party tortfeasor pursuing a products-liability based wrongful death action. The plaintiff and the defendant subsequently entered into a structured settlement. The plaintiff received a $210,000 lump-sum payment, from which attorney fees and costs were to be deducted. The plaintiff further received $11,928 each year, increasing at six percent a year, compounded annually for twenty-five years certain. Finally, the plaintiff's and the decedent's daughter received five payments in the amounts of $11,000, $12,000, $13,000, $14,000 and $22,000 to begin six years from the date of the settlement. The total amount recovered was to be $936,424.66 (i.e., $210,000 plus $654,424.66, the annuity payments to the plaintiff for twenty-five years, plus $72,000, the annuity payments to the plaintiff's and the decedent's child). The plaintiff's attorney sought approval of fees in excess of those provided for in his contingent-fee agreement with the plain-

tiff or allowable under a New Jersey court rule regulating attorney fees. The plaintiff claimed that the present value of the settlement was $472,722. The present cost of the annuities was $399,600. The court held:

> [T]he cost of the annuities reflects the actual present value in the marketplace. The marketplace cost is the acid test in a case like this—with fixed, guaranteed, periodic payments not requiring actuarial assumptions as to life expectancy or survivorship—rather than calculations of "value" that involve interest rate estimates for the future. In addition, presumably defendants would be willing to alternatively pay the total cash cost of the package, or $399,600, to plaintiffs now—since they are presently expending such total to plaintiffs . . . . [*Merendino, supra,* pp 509-510.]

See also *Donaghy v Napoleon,* 543 F Supp 112 (D NJ, 1982); *Tobias v Autore,* 182 NJ Super 328; 440 A2d 1171 (1982).

We agree with the reasoning in *Merendino, supra.* Here, plaintiffs' annuity was to pay them $8,700 for each month of Kenneth Bonarek's life. Payments to plaintiffs were guaranteed for ten years in the event Kenneth Bonarek died within that period. Furthermore, there was a three percent annual compound escalator. Plaintiffs' law firms also had annuities to pay their fees. The costs of the annuities are their present values. *Merendino, supra.* Consequently, plaintiffs' recovery for purposes of the *Franges* formula was the cost of their annuities added to their lump-sump payments. Similarly, the cost of plaintiffs' law firms' annuities added to their other costs was their cost of recovery. The trial court properly granted plaintiffs' motion for declaratory judgment on the cost of recovery.

Affirmed.